**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In the Matter of: | } | |
| SHARRON CHANEY | } | CASE NO. 17-80989-CRJ-7 |
| SSN:   XXX-XX-1590 | } | |
| CARL CHANEY | } | CHAPTER 7 |
| SSN: XXX-XX-3928 | } | |
| Debtor. | } | |
| | | |
| SUE TINSMAN | } | A.P. No. 17-80058-CRJ-7 |
| Plaintiff, | } | |
| v. | } | |
| | } | |
| CARL CHANEY | } | |
| SHARRON CHANEY | } | |
| Defendants. | } | |

**MEMORANDUM OPINION ON COMPLAINT**
**TO DETERMINE DISCHARGEABILITY**

This Adversary Proceeding came before the Court on September 20, 2018 for trial on the Complaint to Determine Dischargeability filed by Sue Tinsman (hereinafter the "Plaintiff") against Carl and Sharron Chaney (hereinafter the "Defendants"), seeking a determination that the debt owed by the Defendants is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt obtained by false pretenses, false representation or actual fraud; § 523(a)(4) as a debt for fraud in a fiduciary capacity; and/or § 523(a)(6) as a debt for willful and malicious injury.

This action arises out of an unfortunate, contentious and long-standing family dispute primarily involving funds which the Plaintiff asserts that she advanced to the Defendants, her father and step-mother, for the purchase of real property with the understanding that the Defendants would include her name on the deed. Unfortunately, the agreement between the parties, if any, was verbal and the Defendants dispute each of the Plaintiff's allegations. The Plaintiff also seeks a finding of nondischargeability for additional funds given to the Defendants from the

cancellation of a burial insurance policy purchased by the Plaintiff for her father. The Defendants admit receiving or benefitting from the proceeds, but contend that the Plaintiff gave the funds to them as an unsolicited gift.

At the conclusion of the trial, the Court entered an Order Requiring Post-Trial Briefs to be filed by both parties on or before November 9, 2018, specifically addressing how the testimony and the evidence presented during the trial relates to each element of the Plaintiff's causes of action. On November 9, 2018, counsel for the Plaintiff timely complied by filing Plaintiff's Post-Trial Brief.[1] Counsel for the Defendants failed to file a Post-Trial Brief as specifically directed and ordered by the Court.

The Court has now fully considered the Plaintiff's Post-Trial Brief, the testimony and evidence presented at trial, and the applicable law. For the reasons set forth below, judgment is entered in favor of the Defendants as the Court finds that the Plaintiff failed to prove by a preponderance of the evidence that the debt at issue should be excepted from discharge. The Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

## STIPULATION OF FACTS

On September 19, 2018, the parties filed a Joint Pre-Trial Order in which they stipulated as follows:

---

[1]      Brief and Argument of Plaintiff, ECF No. 68.

[2]      To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. Further, to the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

2

1.     The Defendants, Carl Chaney and Sharron Chaney (hereinafter Carl and Sharron), moved from Alabama to North Carolina in June of 2015.

2.     Carl and Sharron moved back to Alabama in November of 2015.

3.     Carl bought real estate consisting of a mobile home and land at Eagle Landing in North Carolina by deed dated July 30, 2015, for $35,500.00.

4.     Carl sold the mobile home and land at Eagle Landing by deed dated November 6, 2015, for $27,000.00 by cashier's check.

5.     All proceeds of the sale immediately above referenced went to Carl and none to Sue Tinsman.[3]


## FINDINGS OF FACT

1.     The Plaintiff lives in North Carolina where she owns an over-the-road truck and trailer repair business, J&S Truck & Trailer Repair, Inc., which she operates as the president and 100% shareholder.   The Plaintiff is fifty years old and her education includes a GED and other technical degrees earned on-line. Mr. Chaney is seventy-seven years old and is not employed.   Although Mr. Chaney's education level is unknown, the Defendant was unable to identify various documents offered at trial because he is illiterate, admitting that he is unable to read or write. The Defendants receive Social Security benefits totaling $1,856 per month as their sole source of income.[4]

2.     The relationship between the Plaintiff and her father has been tenuous for more than thirty years beginning when, according to the Plaintiff, she was forced to seek bankruptcy relief during the mid-1980's because her father failed to pay a debt on which she had co-signed. The parties re-kindled their relationship during the fall of 2009 when the Plaintiff traveled

---

[3]     Joint Pre-Trial Order, ECF No. 55.
[4]     *See* Income Affidavits of Carl and Sharron Chaney, Plaintiff's Exhibits O and P.

3

to Alabama upon learning from her father that her mother, to whom the Defendant was no longer married, was dying of cancer.

3. Thereafter, it appears that their relationship remained on good terms for a period of approximately five years during which time the Plaintiff contends that she provided financial assistance to her father on multiple occasions.

4. In addition to providing financial assistance, the Plaintiff explained that she assisted her father in recovering property which her mother had transferred to the Defendant by a Deed conveying real property in Cullman County, Alabama to "Carl Chaney" approximately one month before passing away (hereinafter the "Alabama property"). Mr. Chaney filed an unlawful detainer action against his son, Carl Newman Chaney, in the Circuit Court of Cullman County, Alabama, alleging that he unlawfully obtained copy of the recorded Deed and purported to transfer the property to a third-party. The Defendant recovered the property on Motion for Summary Judgment supported by the Plaintiff's Affidavit in which she affirmed that her mother intended to convey the property to her father.[5]

5. The Plaintiff also purchased a burial insurance policy for the Defendant after her father executed his Last Will and Testament leaving the Plaintiff and another sibling a one-half interest in the Alabama property, conditioned upon the purchase of the insurance policy. According to the Plaintiff, her father orally promised to give her a portion of the sales proceeds if he ever sold the Alabama property to compensate her for her assistance in recovering the property. The Defendant denies having made the promise, countering that he would have prevailed in the action against his son without the Plaintiff's assistance.

---

[5] Affidavit of Sue Tinsman, Plaintiff's Ex. W.

4

6. In April of 2015, Mr. Chaney agreed to move to North Carolina to work for his daughter, the Plaintiff. The Plaintiff testified that she wanted her father's assistance caring for another sibling who also worked for her. According to the Plaintiff, her brother has been convicted of numerous felonies and she wanted her father to help keep him out of trouble.

7. Before the Defendants moved to North Carolina, the Plaintiff began searching for a house for the Defendants to purchase and found what appeared to be a suitable home located at 705 Liberty Drive, Thomasville, North Carolina (hereinafter the "Liberty Drive property"). On May 13, 2015, the Defendants entered into a contract for the purchase of the property while they were still in Alabama.[6] On May 11, 2015, the Plaintiff paid the $1,000 earnest money deposit required under the contract.[7] While the Plaintiff states in her Post-Trial Brief that both she and the Defendants signed the contract to purchase the Liberty Drive property, the purchase contract was not offered into evidence. The Termination of Contract by Mutual Agreement with Release of Earnest Money, dated July 2, 2015, only listed the Defendants as the buyers.[8] However, Mrs. Chaney testified that the Plaintiff's name had been included on the Liberty Drive contract, explaining that the property cost substantially more than the property which Mr. Chaney eventually purchased in his name alone for $35,500. The purchase price of the Liberty Drive property was not disclosed.

8. Although the Defendants were unable to sell the Alabama property before moving to North Carolina, they sold most of their personal possessions and certain equipment prior to moving. The Plaintiff testified that her father transferred $12,000 to her from the sales

---

[6] Termination of Contract by Mutual Agreement referencing contract date of May 13, 2015, Plaintiff's Ex. E.

[7] Check issued by J&S Truck & Trailer Repair, Inc. dated May 11, 2015 in the amount of $1,000, Plaintiff's Ex. C.

[8] Plaintiff's Ex. E.

5

proceeds in satisfaction of her one-third interest in the Alabama property as he had promised. The Defendant admits that on May 20, 2015 he wired $12,000 to the Plaintiff, but asserts that he transferred the funds to his daughter for her to hold for him while he transitioned to North Carolina.[9]

9.      According to the Plaintiff, at her father's request, she immediately loaned the $12,000 back to her father on May 26, 2015, just days after he wired the funds to her so he could purchase the Liberty Drive property. In return, the Plaintiff alleges that Mr. Chaney promised that her name would be included on the deed to the property.

10.     Upon moving to North Carolina in June of 2015, the Defendants resided with the Plaintiff while they continued to search for a home.   After the Defendants were unable to obtain financing to purchase the Liberty Drive property, the earnest money was released to the Defendants by check dated July 7, 2015.[10] Mr. Chaney admits that the Plaintiff wrote the check for the earnest money, but testified that the money came from the $12,000 that he had wired to the Plaintiff to hold for him. Mrs. Chaney testified that the Plaintiff drove them to pick up the check and told them to keep the refund because the money belonged to them.

11.     According to the Plaintiff, the Defendants could not obtain financing to purchase a house because they were waiting on the Alabama property to sell. The Plaintiff asserts that the Defendants requested that she loan them an additional $10,000 to purchase a home with the understanding that, in addition to placing the Plaintiff's name on the deed, Mrs. Chaney

---

[9]     Checking Account Statement reflecting wire transfer on May 20, 2015 to J&S Truck and Trailer Repair, Defendants' Ex. B.
[10]    *See* Real Estate Closing document reflecting disbursement on July 7, 2015 in the amount of $1,000 to Carl and Sharron Chaney, Plaintiff's Ex. F.

would reimburse the Plaintiff by making monthly payments in the amount of $423.50 from her Social Security check. In June of 2015, the Plaintiff borrowed $14,472.39 from Springleaf Financial, with 18.02% interest, for the stated purpose on the loan application of "helping her father."[11]

12.     Thereafter, the Plaintiff testified that she made multiple disbursements to the Defendants between June and August of 2015 totaling $10,000.[12] At trial, the Plaintiff offered two checks into evidence issued by her trucking business, totaling $5,000.[13] The first check dated June 8, 2015 in the amount of $3,000 was made payable to cash and the second check dated July 17, 2015 in the amount of $2,000 was made payable to Carl Chaney. While the Defendants did not endorse the $3,000 check, it appears that the same checking account numbers, while not clearly legible, are stamped on the back of both checks. The Plaintiff failed to submit additional evidence in support of her allegation that she gave the balance of the Springleaf loan proceeds to the Defendants.

13.     In addition to the amounts stated above, the Plaintiff obtained a refund in the amount of $4,970 from the insurance burial policy which she had purchased for her father in Alabama when he moved to North Carolina. The Plaintiff used $1,100 of the proceeds to purchase an urn and remembrance necklaces for Mrs. Chaney's mother and gave the balance, $3,850, to her father. The Defendants admit receiving and benefiting from the proceeds, but contend that the Plaintiff gave the proceeds and remembrance items to them as unsolicited gifts.

---

[11]     Loan Agreement and Disclosure Statement, Plaintiff's Ex. H.
[12]     *See* Plaintiff's Post-Trial Brief, ¶ I, ECF No. 68.
[13]     *See* Plaintiff's Exs. K and L.

14.     On July 1, 2015, the Plaintiff and the Defendants executed a contract to buy property located at 810 Bryan Street, Thomasville, North Carolina (hereinafter the "Bryan Street property") for $57,000.[14] The Plaintiff paid the $500 earnest money deposit required under the contract. After the parties were unable to obtain financing to purchase the property, the deposit was returned to the Defendants. It is undisputed that the Defendants paid the $500 earnest deposit back to the Plaintiff through wages the Plaintiff deducted from Mr. Chaney's salary.

15.     On July 30, 2015, the Defendants purchased real property located at 6511 Eagle Landing Drive, Trinity, North Carolina for $35,500 without placing the Plaintiff's name on the Deed to the property (hereinafter the "Eagle Landing property"). Instead, only Mr. Chaney's name was listed on the Deed dated July 30, 2015.[15] Although the Defendants were living with the Plaintiff when they purchased the property, the Plaintiff was apparently not involved in the transaction and was not aware that the Defendants had located and purchased the property.

16.     Mr. Chaney testified that he paid cash for the Eagle Landing property, using proceeds from the sale of the Defendants' personal property and equipment when they moved to North Carolina totaling approximately $40,000.00. According to Mr. Chaney, he did not need his daughter's money because he had sufficient funds from the sale of the equipment to purchase the property.

---

14     Offer to Purchase and Contract, Plaintiff's Ex. G.
15     North Carolina Special Warranty Deed, Plaintiff's Ex. A.

8

17.     After the Defendants purchased the Eagle Landing property without placing the Plaintiff's name on the deed and moved out of the Plaintiff's home, the Plaintiff fired her father, not once but twice, thus ending their five-year reconciliation.

18.     On November 6, 2015, Mr. Chaney, being no longer employed, sold the Eagle Landing property for $27,000 without paying any of the proceeds to the Plaintiff and returned to Alabama.[16]   The Defendants used the sales proceeds to pay moving expenses and to purchase a home on October 23, 2015 in Arab, Alabama for $35,000.[17]

19.     On July 8, 2016, the Plaintiff filed a Complaint against the Defendants in North Carolina, alleging claims for conversion, fraud, constructive fraud, and unjust enrichment. After the Defendants filed for relief under Chapter 7 of the Bankruptcy Code on March 29, 2017, the civil action was stayed.

## CONCLUSIONS OF LAW

A fundamental objective of the Bankruptcy Code "is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort."[18] To effectuate this fresh start policy, the "Bankruptcy Code contains broad provisions for the discharge of debts, subject to" certain limited exceptions enumerated under 11 U.S.C. § 523(a).[19]   While the Bankruptcy Code's fresh start policy is limited to honest debtors, "courts generally construe the statutory exceptions to discharge

---

[16]     North Carolina General Warranty Deed, Plaintiff's Ex. B.
[17]     Land Installment Sales Contract, Plaintiff's Ex. M.
[18]     *Beem v. Ferguson (In re Ferguson),* 713 Fed. Appx. 974, 977 (11th Cir. 2018)(*quoting In re St. Laurent,* 991 F.2d 672, 680 (11th Cir. 1993)).
[19]     *Lamar, Archer & Cofrin v. Appling (In re Appling),* 138 S. Ct. 1752, 1758 (2018).

in bankruptcy liberally in favor of the debtor, and recognize that the reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural.'"[20]

The applicable standard of proof in all dischargeability proceedings is the "ordinary preponderance-of-the-evidence standard."[21] Thus, the Plaintiff bears the burden of establishing by a preponderance of the evidence that the debt at issue should be excepted from the Defendants' discharge pursuant to one of the exceptions under § 523(a).[22]

## I.        Standard under 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, or refinancing of credit, to the extent obtained by . . . (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"[23]  "Actual fraud" as used in § 523(a)(2)(A) means "any fraud that involves moral turpitude or intentional wrong" which is "done with wrongful intent."[24]

The Eleventh Circuit has generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud.[25] Therefore, the Plaintiff must establish by a preponderance of the evidence the following elements to establish a claim under § 523(a)(2)(A):

---

[20]        *Taylor v. Wood (In re Wood)*, 245 Fed. Appx. 916, 917 (11th Cir. 2007)(*quoting In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994)).

[21]        *Grogan v. Garner*, 498 U.S. 279, 291 (1991)(holding that the preponderance of the evidence standard is the proper burden of proof in nondischargeability proceedings).

[22]        *See Kane v. Stewart Tilghman Fox & Bianchi (In re Kane),* 755 F.3d 1285, 1293 (11th Cir. 2014)(citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

[23]        11 U.S.C. § 523(a)(2)(A).

[24]        *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

[25]        *In re Wood*, 245 Fed. Appx. at 917 (11th Cir. 2007)(*quoting In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998)).

(1) The debtor made a false representation with the intention of deceiving the creditor;

(2) The creditor relied on the false representation;

(3) The reliance was justified; and

(4) The creditor sustained a loss as a result of the false representation.[26]

In the case of *In re Wood,* the Eleventh Circuit explained the breadth of the meaning of false pretenses under § 523(a)(2)(A), noting as follows:

> The concept of false pretenses is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive. . . . It is a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor.... Silence or concealment as to a material fact can constitute false pretenses.[27]

Additionally, the Eleventh Circuit explained that "false pretense contemplates a misrepresentation that is intentional or made with reckless indifference to the truth."[28]

The Plaintiff argues that the Defendants obtained approximately $23,000 by means of false representations of material facts, concealment of facts, or both, including their promises to place the Plaintiff's name on the deed of any real property they purchased in exchange for the money loaned. The Plaintiff further seeks repayment for proceeds from the burial insurance policy which she gave to the Defendants. The Plaintiff asserts that the Defendants' misrepresentations were made with knowledge of their falsity or with reckless disregard of their falsity, reasonably calculated to deceive the Plaintiff, or made with reckless indifference as to their truth.   Further,

---

[26]     *Id.*

[27]     *Id.* at 918 (*quoting In re Gilmore*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998)).

[28]     *Id.*

the Plaintiff argues that she relied upon the misrepresentations and was, in fact, deceived by their misrepresentations. The Defendants deny that the Plaintiff loaned any money to them at all, and further deny having promised to place the Plaintiff's name on the deed to the home which they eventually purchased.

For purposes of § 523(a)(2)(A), a false representation includes "a false representation as to one's intention, such as a promise to act."[29] To be actionable, "a debtor must lack the intent to perform the future act when the promise was made."[30] If at the time the promise is made, "the debtor did not *intend to perform,* then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met)."[31] "However, a debtor's 'mere failure to perform is not sufficient evidence of scienter nor is subsequent conduct contrary to the original representation necessarily indicative of fraudulent intent."[32]

Here, the Court finds that the Plaintiff has failed to establish by a preponderance of the evidence the first element of common law fraud for purposes of § 523(a)(2)(A), that the Defendants made a false representation with the intent to deceive the Plaintiff. The facts before this Court are similar to the case of *In re Cascio,* in which a Chapter 7 debtor's girlfriend filed a complaint objecting to the dischargeability of a debt for contributions that she made to the purchase of a new home with the debtor, arguing that the debtor failed to place her name on the deed as promised.[33] The bankruptcy court determined that the plaintiff failed to establish by a preponderance of the

---

[29]     *Whitcomb v. Smith (In re Smith),* 572 B.R. 1, 15 (1st Cir. BAP 2017).

[30]     *Bernacchi v. Cascio (In re Cascio)*, 568 B.R. 851, 856 (Bankr. M.D. Fla. 2017).

[31]     *In re Smith,* 572 B.R. at 16.

[32]     *Id.*

[33]     *In re Cascio*, 568 B.R. 851 (Bankr. M.D. Fla. 2017).

evidence that the debtor lacked intent to perform his verbal agreement with the plaintiff at the time that the agreement was made, where the debtor obtained a VA mortgage to finance the purchase, the plaintiff understood that she could not sign the mortgage because the parties were not married but could be added as a co-owner one year after its purchase, and the parties separated before the plaintiff's name could be added to the deed. Although it was undisputed in *Cascio* that the debtor verbally agreed to share both the costs and ownership of the home, the bankruptcy court concluded that the plaintiff failed to establish that the debtor lacked the intent to perform the agreement at the time that it was made. Further, the bankruptcy court explained that the failure to perform a mere promise is generally not sufficient to make a debt nondischargeable under § 523(a)(2)(A), even if there is no excuse for the subsequent breach.[34]

In the case before this Court, the Defendants not only deny that the Plaintiff loaned any money to them, but further deny that they promised to include the Plaintiff's name on the deed to the property that they purchased. It is undisputed that the $12,000 which the Plaintiff transferred to the Defendants constituted funds which the Defendants first wired to the Plaintiff on May 20, 2015.[35] While the Plaintiff argues that the wire transfer represented funds which the Defendant promised voluntarily to give the Plaintiff if he ever sold the Alabama property, the Defendant denies having made this promise, insisting instead that he transferred the money to his daughter for her to hold for him while he moved to North Carolina. Admittedly, the Plaintiff voluntarily gave the funds back to her father when he asked for the funds just days later on May 26, 2015, which in fact supports Mr. Chaney's contention that he wired the money to his daughter to hold for him as he transitioned to North Carolina. While the wire transfer for this stated purpose may

---

[34] *Id.* at 858.
[35] Defendants' Ex. B.

not at first blush seem reasonable, the Court is mindful that Mr. Chaney is illiterate and appears to have relied upon his daughter for help as he moved to North Carolina to live near and work for her.

The Plaintiff further asserts that she obtained the Springleaf loan in June of 2015 and gave the loan proceeds to the Defendants between June and August of 2015, again with the understanding that her name would be placed on any deed to real property purchased by the Defendants and that the loan would be repaid by the Defendants. Although it does appear that the Plaintiff gave the Defendants at least a portion of the loan proceeds, the Plaintiff failed to submit evidence establishing that she gave the entire $10,000 to the Defendants. While the amount of funds, if any, loaned by the Plaintiff to the Defendants to purchase property in North Carolina is unclear, it is clear that the Plaintiff did attempt to assist the Defendants in their search for a home and to help them obtain financing. Nevertheless, the Court finds that the Plaintiff failed to establish by a preponderance of the evidence either that the Defendants promised to include the Plaintiff's name on any real property which they purchased, or in the alternative, that if the Defendants did verbally agree to include the Plaintiff's name on the deed to their home, that the Defendants lacked the intent to perform when the promise was made.

On July 1, 2015, the Plaintiff and the Defendants executed a contract to purchase the Bryan Street property for $57,000. The Plaintiff contends the fact that her name was included on the Bryan Street contract is ample evidence that her father promised to include her name on any property purchased. However, Mrs. Chaney testified that the Plaintiff's name was included on the first property they attempted to purchase because it cost substantially more than the property which Mr. Chaney eventually purchased. While the Liberty Drive purchase price was not disclosed, and it is not clear whether Mrs. Chaney was in fact referring to the Bryan Street contract, the Court

14

finds that the inclusion of the Plaintiff's name on the Bryan Street contract with a purchase price of $57,000 is insufficient to satisfy the Plaintiff's burden of establishing by a preponderance of the evidence that the Defendants promised to include her name on any property subsequently purchased.

After the Defendants were unable to obtain financing to purchase the Bryan Street property for $57,000, the Defendants made an offer to purchase the Eagle Landing property for substantially less money, only $35,500. Mr. Chaney testified that he had sold personal property and equipment in Alabama prior to moving for at least $40,000 which enabled him to purchase the Eagle Landing property for cash. Although the Plaintiff's name was included on the Bryan Street contract, it is just as plausible that her name was included, not to secure repayment for any financial assistance which she may have provided to the Defendants, but because the Defendants needed her signature on the loan to obtain financing which was no longer required when Mr. Chaney purchased the Eagle Landing property for substantially less. While it is evident that the Plaintiff provided assistance to the Defendants while they transitioned to North Carolina, the Court finds that the Plaintiff failed to prove by a preponderance of the evidence that the Defendants obtained money from the Plaintiff by making false representations with the intention of deceiving the Plaintiff or engaged in conduct calculated with intent to deceive the Plaintiff.

The Court further finds that the Plaintiff failed to establish by a preponderance of the evidence that she relied on false representations made by the Defendants, if any, and that her reliance was justified for purposes of § 523(a)(2)(A). The Plaintiff argues that her reliance was reasonable, or justified, under the circumstances because the misrepresentations at issue were made by her father with whom she had reconciled after a period of estrangement, the Defendants were living with the Plaintiff, her father was working for her, and he had recently followed through

15

on a promise to give the Plaintiff a portion of the sale proceeds of her deceased mother's property. The Court notes that the Plaintiff relies upon an Alabama Supreme Court case, *Ala. River Group, Inc. v. Conecuh Timber, Inc.*, 2017 WL 4324889 (Ala. 2017) involving claims under Ala. Code § 6-5-101 for fraud and misrepresentations of material fact under which the elements of misrepresentation include reasonable reliance.[36]  For purposes of § 523(a)(2)(A), the Supreme Court has held that the fraud exception to discharge requires justifiable reliance which is a less exacting standard than reasonable reliance.[37]  Nevertheless, the Court finds that the Plaintiff failed to establish by a preponderance of the evidence that she justifiably relied on misrepresentations, if any, made by the Defendants.

"To constitute justifiable reliance," the Eleventh Circuit has stated that a "plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility."[38]  The Eleventh Circuit recently elaborated as follows:

> Although the plaintiff's reliance on the misrepresentation must be justifiable, ... this does not mean that his conduct must conform to the standard of the reasonable man." *Id.* (quotation omitted) (second alteration in original). Justifiable reliance is gauged by "an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Id.* (quotation omitted). As the Supreme Court has explained, when "a seller of land ... says it is free of encumbrances," then "a buyer's reliance on this factual representation is justifiable, even if he could have walk[ed] across the street to the office of the register of deeds in the courthouse and easily have learned of an unsatisfied mortgage." *Field v. Mans,* 516 U.S. 59, 70, 116 S. Ct. 437, 133 L.Ed.2d 351 (1995) (quotation omitted) (second alteration in original). The Supreme Court has elaborated that "only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a *cursory glance,* or he has discovered something

---

[36]     Plaintiff's Post-Trial Brief, ECF No. 68.

[37]     *See Field v. Mans*, 516 U.S. 59, 74 (1995).

[38]     *In re Denise Roberts-Dude*, 597 Fed. Appx. 615, 617 (11th Cir. 2015)(*quoting City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 283 (11th Cir. 1995)).

16

which should serve as a warning that he is being deceived" is the plaintiff "required to make an investigation of his own." *Id.* at 71, 116 S.Ct. 437 (quotation omitted; emphasis added). To put it another way, reliance is not justified "only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the *use of his senses.* Thus a defect that any experienced horseman would at once recognize at *first glance* may not be patent to a person who has had no experience with horses." *Id.*[39]

Here, according to the Plaintiff's own testimony, her relationship with her father had been strained for approximately thirty years because she had to file bankruptcy during the mid-1980's after he failed to pay a debt on which she had co-signed. Further, the Defendants ability to obtain financing was clearly questionable, at best, as they were denied loans for both the Liberty Drive property and the Bryan Street property. While the Plaintiff argues that her reliance was justified in part because her father transferred $12,000 to her, the reason for the transfer is disputed by the Defendants, and the Plaintiff in fact returned the funds to the Defendants within days of receipt which supports the Defendants' argument that the funds were only transferred to the Plaintiff to hold while they were moving. Under the unique circumstances of this case, and in the light of the information apparent to the Plaintiff based on her past experiences with her father and the Plaintiff's intimate understanding of the Defendants' financial condition, the Court finds that any loss is the Plaintiff's own responsibility and her reliance on oral representations, if any, made by the Defendants was not justified for purposes of § 523(a)(2)(A).

Finally, the Court notes that the Plaintiff failed to address the issue of the burial insurance proceeds in her Post-Trial Brief and appears to have abandoned this issue. Regardless, the Court concludes based upon the testimony of the Defendants that the burial insurance proceeds were given to the Defendants by the Plaintiff as an unsolicited gift. Mrs. Chaney testified that she was

---

[39]        *Id.* at 617-18.

17

not even aware that the Plaintiff intended to use a portion of the proceeds to purchase items in remembrance of Mrs. Chaney's mother and there was no evidence or testimony that the balance of the proceeds constituted anything other than a gift from the Plaintiff to her father.

Based upon the forgoing, the Court finds that the Plaintiff failed to establish by a preponderance of the evidence that the debt at issue is nondischargeable pursuant to § 523(a)(2)(A) as a debt obtained by false pretenses, false representation or actual fraud.

## II.       Standard under 11 U.S.C. § 523(a)(6)

The Plaintiff also asserts that the debt owed to her is nondischargeable as a debt resulting from willful and malicious injury under 11 U.S.C. § 523(a)(6). To fall within this exception to discharge, the debt must arise from a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. The Plaintiff asserts that the Defendants, by intentionally failing to include her name on the Deed to their home, and by retaining the Eagle Landing sales proceeds, willfully and maliciously injured the Plaintiff.

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt that results from "willful and malicious injury by the debtor to another entity or to the property of another entity."[40] The terms willful and malicious are distinct concepts for purposes of § 523(a)(6). The term willful "means 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act*

---

[40]     11 U.S.C. § 523(a)(6).

18

that leads to injury.'"[41] "'Malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will.'"[42]

For purposes of § 523(a)(6), a "debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."[43] "Negligently or recklessly inflicted injuries do not fall within the ambit of § 523(a)(6)."[44] The Eleventh Circuit has acknowledged that the Circuits are split as to "whether the term 'substantial certainty' is a subjective standard, requiring a creditor to prove that the debtor actually knew that the act was substantially certain to injure the creditor, or an objective standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury."[45] The Eleventh Circuit Court of Appeals has declined on at least two occasions to parse the distinction, finding each time that even under the more stringent subjective standard that the evidence in the cases before it supported a finding of nondischargeability.[46]

To establish malice, the Eleventh Circuit has explained that "a showing of specific intent to harm another is not necessary."[47] Instead, for purposes of § 523(a)(6) "[m]alice can be implied."[48] Indeed, "'[c]onstructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.'"[49]

---

[41]   *In re Ferguson*, 713 Fed. Appx. at 983 (*quoting Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).
[42]   *Id.* at 983-84 (*quoting In re Jennings,* 670 F.3d 1329, 1334 (11th Cir. 2012)).
[43]   *In re Kane*, 755 F.3d at 1293(*quoting In re Jennings,* 670 F.3d 1329, 1334 (11th Cir. 2012)).
[44]   *Chicago Regional Council of Carpenters Welfare Fund v. Van Der Laan (In re Van Der Laan),* 556 B.R. 366, 381 (Bankr. N.D. Ill. 2016).
[45]   *In re Kane*, 755 F.3d at 1293.
[46]   *Id.*
[47]   *Id.* at 1294.
[48]   *Id.*
[49]   *In re Monson*, 661 Fed. Appx. at 683(*quoting Ikner*, 883 F.2d 986, 991 (11th Cir. 1989)).

19

According to the Plaintiff, she loaned the Defendants more than $23,000 to purchase a home in North Carolina with the express understanding that her name would be placed on the deed to the residence to serve a security. Unfortunately, the parties' reunion came to an end in the fall of 2015 when the Plaintiff terminated her father upon learning that he had purchased a home without placing her name on the deed as she alleges he had promised.

For the reasons stated above, the Court concludes that the Plaintiff failed to establish by a preponderance of the evidence that the Defendants committed any willful and malicious conduct that resulted in a loss to the Plaintiff for purposes of § 523(a)(6). While the Plaintiff's name was included on the contract to purchase the Bryan Street property, there is no credible evidence that the Defendants promised to include the Plaintiff's name on any property subsequently purchased. As previously stated, it is just as plausible that the Plaintiff agreed to sign the Bryan Street purchase contract to help her father obtain financing which he no longer needed when he purchased the Eagle Landing property given that it cost considerably less. The Court further notes that Mr. Chaney purchased the Eagle Landing property in his name alone, without even including his wife's name on the deed. While the Plaintiff and Mrs. Chaney's names were both included on the Bryan Street contract when the parties were attempting to obtain financing, Mr. Chaney was able to purchase the Eagle Landing property without the necessity of financing. Under the circumstances of this case and given the level of financial sophistication of the parties, the Court does not find that Mr. Chaney committed an intentional act the purpose of which was to cause injury to the Plaintiff or which was substantially certain to cause injury to the Plaintiff, nor that his conduct implied a sufficient degree of malice for purposes of 11 U.S.C. § 523(a)(6).

### III. Standard under 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[50] To sustain a cause of action under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, a creditor must establish that (1) the debtor was acting in a fiduciary capacity; (2) the fiduciary relationship existed prior to the creation of the debt; and (3) the debtor committed an act of fraud or defalcation while acting in such capacity.[51]

The Eleventh Circuit has consistently held that the term 'fiduciary' is not to be construed expansively for purposes of § 523(a)(4), but instead is intended to refer to 'technical' trusts.[52] In the seminal case of *Quaif v. Johnson (In re Quaif)*, the Eleventh Circuit explained the concept of technical trusts for purposes of § 523(a)(4) as follows:

> In nineteenth century jurisprudence, the concept of 'trust' generally fell into two categories: (1) a voluntary trust, created by contract, often referred to as an 'express' trust, and (2) a trust created by operation of law, such as a constructive trust or resulting trust, which generally served as a remedy for some dereliction of duty in a confidential relationship, regardless of the intentions of the parties. In the early judicial interpretation of the predecessors to § 523(a)(4), the courts seemed to include the voluntary, 'express trusts' within the scope of 'fiduciary capacity,' while excluding the involuntary resulting or constructive trust from the scope of the exception. *Davis* and other cases also articulated a requirement that the trust relationship have existed prior to the act which created the debt in order to fall within the statutory exception. A resulting trust would therefore not fall within the exception because the act which created the debt simultaneously created the trust relationship.[53]

---

[50]      11 U.S.C. § 523(a)(4).

[51]      *Kern v. Taylor (In re Taylor)*, 551 B.R. 506 (Bankr. M.D. Ala. 2016); *Allen v. Scott (In re Scott)*, 2012 WL 4471597 *42 (Bankr. N.D. Ala.).

[52]      *In re Jackson*, 724 Fed. Appx. 905, 910 (11th Cir. 2018)(citing *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 953 (11th Cir. 1993)); *Gayle v. Fernandez-Rocha (In re Fernandez-Rocha),* 451 F.3d 813 (11th Cir. 2006)(explaining that the exception for fraud while acting in a fiduciary capacity is narrow).

[53]      *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 953 (11th Cir. 1993)(citations omitted).

21

"Express trusts are voluntary trusts created by contract. An express trust must generally be in writing and must express the parties' intent to create a trust, specifically define the trust property, and name both a beneficiary and a trustee."[54] For purposes of § 523(a)(4), technical trusts may also include certain statutorily-created trusts involving property entrusted by the creditor to the debtor which impose "trust like duties, such as those requiring an agent 'to promptly account for and remit payment of funds' and forbidding commingling the funds with [the agent's] operating or personal accounts."[55]

The case before the Court is similar to the case of *Jackson v. Jackson (In re Jackson),* in which the Eleventh Circuit recently affirmed a bankruptcy court decision's finding that a Chapter 7 debtor's siblings failed to satisfy their burden of proving any fiduciary fraud or defalcation by the debtor under § 523(a)(4). Their dispute stemmed from the transfer of real property by the parties' mother to the debtor before she passed away at the suggestion of another sibling who was an attorney for estate planning purposes. The siblings initially filed an action in state court, arguing that the debtor had promised that after their mother died, she would transfer the property equally to each sibling. After the state court granting partial relief imposing a constructive trust against the property, the debtor filed for Chapter 7 relief while the action was pending on appeal. The siblings then filed an Adversary Proceeding in the bankruptcy court seeking to deny the debtor's discharge and to have the debt excepted from discharge pursuant to § 523(a)(4). The bankruptcy court granted summary judgment in favor of the debtor under § 523(a)(4), explaining that the debtor was

---

[54] *In re Jackson,* 724 Fed. Appx. at 910.

[55] *Aamodt v. Narcisi, II (In re Narcisi, II),* 691 Fed. Appx. 606, 611 (11th Cir. 2017); *Compare In re Quaif,* 4 F.3d at 953(finding that a Georgia insurance statue created a technical trust for purposes of § 523(a)(4)) and *Gayle v. Fernandez-Rocha (In re Fernandez-Rocha),* 451 F.3d 813 (11th Cir. 2006)(determining that a Florida statute requiring doctors to maintain funds to satisfy malpractice debts did not create a fiduciary relationship or technical trust between the debtor and his patient for purposes of § 523(a)(4)).

22

not a fiduciary for purposes of § 523(a)(4) because the alleged breach of fiduciary obligations arose out of a constructive trust, not an express or technical trust. The Eleventh Circuit affirmed, finding that the debtor was not a fiduciary within the meaning of § 523(a)(4) "because the rule refers only to 'technical,' not constructive trusts."[56] "Because the fiduciary relationship must precede the creation of the debt, so must the trust; therefore, a constructive or resulting trust serving 'as the remedy for some dereliction of duty' does not create a fiduciary relationship under § 523(a)(4)."[57]

Here, the Court finds as a matter of law that the Debtor was not a fiduciary for purposes of § 523(a)(4) as there is no evidence that a technical or express trust existed between the parties. The parties did not execute a written agreement expressing their intent to create a trust in which they defined trust property and named both a beneficiary and a trustee. Nor is there evidence of a statutorily-created trust under which the Defendants were to promptly account for and remit the payment of funds. While the Plaintiff argues that she placed a special trust and confidence in her father by loaning money to him with the understanding that he would place her name on the deed of any real property he purchased with the funds, their father-daughter relationship alone is insufficient to create a fiduciary relationship for purposes of § 523(a)(4). As the Eleventh Circuit has consistently explained, the exception under § 523(a)(4) must be construed narrowly to effectuate the Bankruptcy Code's fresh start policy.

Even if the parties' father-daughter relationship were sufficient to create a fiduciary relationship for purpose of § 523(a)(4), the Court would find, under the unique circumstances of this case, that the Plaintiff served as a fiduciary for her father given the nature of their relationship

---

[56]     *In re Jackson*, 724 Fed. Appx. at 910.
[57]     *In re Taylor*, 551 B.R. at 519.

23

in which the Plaintiff appears to have been the dominate figure. After the Defendants left their home in Alabama to live near and work for the Plaintiff, they initially lived with the Plaintiff while she assisted them with their search for a home. It further appears that the Plaintiff provided assistance to the Defendants in their search for a home, at least in part, because her father is illiterate, thereby making the process seemingly significantly more difficult for the Defendants to navigate alone.

Finally, the Court notes that the Plaintiff briefly argued for the first time in her Post-Trial Brief that the Defendants committed larceny for purposes of § 523(a)(4) by taking the Plaintiff's money with the intention of depriving her of same based on the Defendants' denial that they ever promised to place her name on the deed. To determine whether a debt should be excepted from discharge for larceny under § 523(a)(4), the Eleventh Circuit has explained that "larceny requires the unlawful taking of property."[58]   Where the creditor voluntarily turned over property to a debtor under the terms of a consignment agreement, the Eleventh Circuit recently affirmed a bankruptcy court's finding that there was no evidence that the debtor committed larceny, explaining that the "voluntary" nature of the turnover of the property to the debtor meant that the "taking" of the property was not unlawful for purposes of § 523(a)(4)'s larceny provision.[59] Similarly, in this case the Plaintiff alleges that she voluntarily advanced funds to the Defendants. Accordingly, any funds advanced by the Plaintiff as she alleges could not have been unlawfully obtained by the Defendants for purpose of establishing larceny.

While not argued, the Court further notes that the terms embezzlement and larceny differ for purposes of § 523(a)(4) "only in that the initial taking of the property was lawful, or with the

---

[58]     *In re Narcisi, II*, 691 Fed. Appx. at 612.
[59]     *Id.*

owner's consent" for purposes of embezzlement.[60] To establish embezzlement, a creditor must show that: (1) the creditor entrusted property to the debtor; (2) the debtor appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud.[61] Here, the Court concludes that there is no credible evidence that the Plaintiff entrusted funds to the Defendants which they appropriated for another use involving fraud. While it is evident that the Plaintiff assisted the Defendants with their move to North Carolina, for the reasons stated above the Court finds that the Plaintiff failed to establish that she entrusted funds to the Defendants which were fraudulently misappropriated. Unfortunately, the facts before the Court establish only that the parties are involved in a long-standing family dispute in which the Plaintiff alleges that she advanced funds to the Defendants which the Defendants deny.

Based upon the forgoing, the Court finds that the Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendants either acted in a fiduciary capacity or committed embezzlement or larceny for purposes of § 523(a)(4).

## IV.    CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff failed to carry her burden of proof that the debt should be excepted from the Defendants' Chapter 7 discharge pursuant to § 523(a)(2)(A) as a debt obtained by false pretenses, false representation or actual fraud; pursuant to

---

[60]     *Kern v. Taylor (In re Taylor)*, 551 B.R. 506, 521 (Bankr. M.D. Ala. 2016).

[61]     *Id.*

§ 523(a)(4) as a debt for fraud in a fiduciary capacity, embezzlement or larceny; or pursuant to § 523(a)(6) as a debt for willful and malicious injury.

A separate Order will be entered consistent with this Memorandum Opinion.

**IT IS SO ORDERED** this the 20th day of December 2018.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge
